**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUNEDISON, INC.<br>SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re TerraForm Global, Inc. Securities Litigation*, No. 1:16-cv-07967-PKC, and consolidated cases | Docket No. 1:16-MD-02742–PKC<br><br>ECF Case |

---

**MEMORANDUM OF FORMER CLASS MEMBERS BALYASNY AND LUXOR FUNDS IN OPPOSITION TO CLASS PLAINTIFFS' APPLICATION CHALLENGING THE VALIDITY OF REQUESTS FOR EXCLUSION**

---

Lawrence M. Rolnick
Thomas E. Redburn (*pro hac vice* pending)
Marc B. Kramer
Richard A. Bodnar
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Fax:  (212) 262-7402
lrolnick@lowenstein.com
tredburn@lowenstein.com
mkramer@lowenstein.com
rbodnar@lowenstein.com

*Attorneys for Atlas Master Fund, Ltd. Atlas Enhanced Master Fund, Ltd., Atlas Fundamental Trading Master Fund, Ltd., Atlas Quantitative Trading Fund, Ltd., Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Wavefront, LP and Thebes Offshore Master Fund, LP*

## **TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .............................................................................................................3

ARGUMENT...................................................................................................................11

I.     RESPONDENTS' REQUESTS FOR EXCLUSION ARE VALID ..................................11

II.    THE AUTHORITIES CITED BY CLASS PLAINTIFFS ARE INAPPOSITE ...............19

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bonner v. Texas City Independent School District of Texas*,
   305 F. Supp. 600 (D. Tex. 1969) ........................................................................13

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   171 F.R.D. 213 (N.D. Ill. 1997)......................................................................13, 14

*In re Four Seasons Secs. Laws Litig.*,
   493 F.2d 1288 (10th Cir. 1974) ...........................................................12, 13, 14, 18

*Gortat v. Capala Bros., Inc.*,
   No. 07 Civ. 3629, 2011 WL 6945186 (E.D.N.Y. Dec. 30, 2011) .....................12, 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................11, 19

*Lawson v. Fed. Res. Bank of N.Y.*,
   No. 03 Civ. 1154 (PKC), 2004 WL 1770017 (S.D.N.Y. Aug. 6, 2004)................................16

*In re Linerboard Antitrust Litig.*,
   223 F.R.D. 357 (E.D. Pa. 2004)........................................................................13

*McCubbrey v. Boise Cascade Home & Land Corp.*,
   71 F.R.D. 62 (N.D. Cal. 1976)....................................................................13, 18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).........................................................................................11

*Plummer v. Chemical Bank*,
   668 F.2d 654 (1982).............................................................................12, 13, 14

*In re Prudential Securities, Inc. Limited Partnerships Litigation*,
   164 F.R.D. 362 (S.D.N.Y.), *aff'd*, 107 F.3d 3 (2nd Cir. 1996).........................19, 20

*In re Prudential-Bache Energy Income Partnerships Securities Litigation*,
   No. MDL 888, 1995 WL 263879 (E.D. La. May 4, 1995) ................................19, 20

*Silvercreek Management, Inc. v. Banc of America Securities, LLC*,
   534 F.3d 469 (5th Cir. 2008) .......................................................................15, 19

*United States v. Flotron*,
   No. 3:17-cr-00220 (JAM), 2018 WL 1790828 (D. Conn. April 15, 2018) ...........................17

*United States v. Harris*,
    881 F.3d 945 (6th Cir. 2018) ................................................................................17

*United States v. Levy*,
    No. S5 11 Cr. 62 (PAC), 2013 WL 815915 (S.D.N.Y. March 5, 2013)..................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................11

**RULES**

FED. R. CIV. P. 23 ................................................................................ passim

FED. R. EVID. 1006 ................................................................................17

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (6th ed. 1990) ................................................................................16

Pursuant to the Order to Show Cause signed by the Court on April 19, 2018, former class members, Atlas Master Fund, Ltd. Atlas Enhanced Master Fund, Ltd., Atlas Fundamental Trading Master Fund, Ltd., Atlas Quantitative Trading Fund, Ltd. (collectively, the "Balyasny Funds") and Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Wavefront, LP and Thebes Offshore Master Fund, LP (collectively, the "Luxor Funds" and, with the "Balyasny Funds," "Respondents"), respectfully submit this Memorandum of Law in opposition to the application by Lead Plaintiff Pyramid Holdings, Inc. and Plaintiffs Iron Workers Mid-South Pension Fund and Simon Fraser (collectively, "Class Plaintiffs") to declare invalid Respondents' timely-submitted Requests for Exclusion.  As set forth in greater detail below, the purpose of the Class Plaintiffs' request is to force Respondents to involuntarily release their claims so that the Defendants cannot exercise an option to terminate their settlement agreement that they bargained for with Class Plaintiffs.  For the reasons set forth below, there is nothing wrong with Respondents' Requests for Exclusion, Respondents validly removed themselves from the Class, and Class Plaintiffs' application should be denied.[1]

## PRELIMINARY STATEMENT

Respondents have a constitutional right, grounded in the Due Process Clause, to exclude themselves from the Class Settlement and pursue their substantial individual claims against Defendants.  They exercised that right by submitting timely Requests for Exclusion to the Claims Administrator, which Class Plaintiffs concede the Claims Administrator received on March 27,

---

[1] Citations to "Pl Mem." are to the Memorandum in Support in Support of Plaintiffs' Request for Order to Show Cause Why the Requests for Exclusion Should Not Be Deemed Invalid (Doc. 344 on the *In re SunEdison* Docket).  Citations to the "Levit Decl." and "Amin-Giwner Decl." are to the Declarations of Lawrence D. Levit (Doc. 345) and Stephanie Amin-Giwner (Doc. 346) in Support of Plaintiffs' Request for Order to Show Cause Why the Requests for Exclusion Should Not Be Deemed Invalid.  Citations to the "Bodnar Decl." are to the Declaration of Richard A. Bodnar submitted in support of Respondents' opposition.  Respondents take no position with respect to the validity of the Request(s) for Exclusion submitted by Bassam Bahhour.

2018.  The exclusion requests contained all of the information required by the Class Notice, and included documentary proof of Respondents' purchases and sales of TerraForm Global common stock and beneficial owner status consisting of sworn certifications and summary data extracted from the business records of Respondents' investment managers.   The exclusion requests identify the date of each purchase of Global common stock, the date of each sale, the amount of stock purchased or sold and the price of each trade.  Collectively, the Respondents purchased, in aggregate, over 8 million shares.

Class Plaintiffs nevertheless contend that Respondents' timely exclusion requests were invalid because they did not include information that was never requested—specifically, brokerage statements, trade confirmations or documentation of an equivalent nature.  However, to reject a request for exclusion requires more than an argument that more or different information could have been supplied.    As a legal matter, the validity of Respondents' exclusion requests turns on whether they conveyed a "reasonable indication" that they intended to opt-out of the Class.  Courts have repeatedly applied this flexible standard as necessary to protect the constitutional right of absent class members, recognized by the Supreme Court, to exclude themselves from class actions that seek predominantly monetary damages.  Because the exclusion requests explicitly communicated such intent, Respondents satisfied the "reasonable indication" standard and validly opted-out.  That alone is sufficient to deny Class Plaintiffs' application.

Moreover, as a factual matter, Class Plaintiffs are wrong because the Class Notice does not require requests for exclusion to include voluminous trade confirmations or brokerage statements.  Class Plaintiffs point to nothing in the notice that they drafted that imposes  such a requirement, and cite no cases that do so.  In order to be enforceable against class members

under Rule 23, such a specific and onerous documentation requirement had to be conveyed in the Class Notice through plain, unambiguous and easily-understandable language.  No such language exists in the Class Notice that Class Plaintiffs drafted.  And, the documentation Respondents did submit with their exclusion requests clearly satisfies the vague requirement in the Class Notice that those seeking exclusion provide "documentary proof" of their purchases and sales of Global common stock.

Class Plaintiffs have no legitimate grounds for challenging the validity of Respondents' exclusion notices, and cannot lawfully force Respondents to release their substantial claims against Defendants and participate involuntarily in the Class Settlement.  Respondents validly opted-out of the Class.  As a result, the application should be denied.

## BACKGROUND

### A.     The Class Settlement and Class Notice

Class Plaintiffs brought this action on behalf of a putative class of purchasers of the common stock of TerraForm Global, Inc. ("Global") for violations of, *inter alia*, Section 11 of the Securities Act of 1933 in connection with Global's initial public offering ("IPO").  In December 2017, prior to resolution of any motions to dismiss and prior to the conduct of any discovery, Class Plaintiffs subsequently reached a settlement with Defendants in the amount of $57 million on behalf of a Settlement Class (the "Class") consisting of "those persons who purchased or otherwise acquired the common stock of Global pursuant to or traceable to the IPO and were damaged thereby," except for certain persons excluded from the Class.  (Bodnar Decl., Ex. A (Notice of Pendency and Proposed Settlement of Class Action (the "Class Notice")), at 3 (footnote omitted).)  Counsel for the Class indicated an intent to seek an award of $14,600,000 in fees and expenses.  The Court granted preliminary approval to the settlement and scheduled a fairness hearing for April 27, 2018.

The Class Notice, drafted by Class Plaintiffs, explicitly provides that "Opt-Outs, *i.e.*, those Persons who timely and validly request exclusion from the Settlement Class" are excluded from the Class.  (*Id*.)  Class members wishing to opt-out of the Class were instructed to mail an exclusion request to the Claims Administrator, "to be received no later than March 27, 2018[.]" (*Id*. at 6.)  This exclusion request was to take the form of

> a letter that (A) clearly indicates your name, address, phone number and e-mail contact information (if any) and states that you 'request to be excluded from the Settlement Class in *In re TerraForm Global, Inc. Securities Litigation*, 1:16-cv-07967-PKC (S.D.N.Y.),' (B) states the date, number of shares and dollar amount of each Global common stock purchase or acquisition and any sale transactions, and (C) states the number of shares of Global common stock held by you as of the date of the submission of your exclusion request.  In order to be valid, such request for exclusion ***must be submitted with documentary proof*** (i) of each purchase and, if applicable, sale transaction of Global common stock and (ii) demonstrating your status as a beneficial owner of the Global common stock….

(*Id*. at 5-6 (emphasis added).)  The highlighted language is the focus of the dispute in this case. Yet, the Class Notice does not define "documentary proof" and nowhere states that the validity of a request for exclusion depends on whether the party seeking exclusion has submitted a particular kind of document (such as a trade confirmation or brokerage statement) to corroborate his purchases and beneficial owner status.  Nor has Lead Counsel or the Claims Administrator provided any other instructions – such as on the Claims Administrator's website – that specify which forms of "documentary proof" are deemed acceptable (or insufficient) to support a request for exclusion from the Class.

Such instructions *do* exist for submitting proofs of claim against the settlement fund and obtaining a share of the settlement proceeds.  The Claims Administrator's "Electronic Filing Instructions" for filing claims in this case contain a section on "Data Verification Documents." (Bodnar Decl., Ex. B (GCG Electronic Filing Instructions, In re TerraForm Global, Inc.

Securities Litigation) at 4.)   In order to verify the data necessary for a proof of claim, institutions are required only to "provide a notarized affidavit or signed letter on [its] firm's letterhead" that confirms the number of distinct claims and transactions, sets forth the source of the data for each claim, attests to the truth and accuracy of that data, and is executed by an authorized signatory. (*Id*.)   Thus, brokerage statements or trade confirmations are not required for institutions to submit a valid proof of claim electronically.   Although some claimants may be subject to a "data integrity audit" pursuant to which they may be required to provide "trade confirmations, monthly statements, or [the] equivalent, to independently verify the details of transactions and/or holding positions," that is only if their claim is selected for such heightened scrutiny by the Claims Administrator or Lead Counsel.   As discussed further below, Class Plaintiffs thus are interpreting the Class Notice to require more documentation from parties ***seeking to exclude themselves*** from the Class than from those ***trying to obtain a portion of the settlement fund***.

> **B.   Respondents' Requests for Exclusion**

The Balyasny Funds and the Luxor Funds are institutional investors who were members of the Class prior to submission of their exclusion requests.   Collectively, Respondents suffered estimated Section 11 damages well in excess of $50 million on their purchases of Global common stock pursuant to or traceable to the IPO, but stand to receive a fraction of that from the class settlement fund.   (Bodnar Decl., ¶ __.)   Accordingly, their damages are essentially equivalent to the entire class settlement and, after reduction of that settlement for attorneys' fees and expenses, actually exceed the entire net settlement proceeds.   Believing this was an inadequate recovery, Respondents submitted two exclusion requests – one for the four identified Balyasny Funds and one for the four identified Luxor Funds (Amin-Giwner Decl., Exs. 1, 2) (collectively, the "Requests for Exclusion") – to the Claims Administrator, which Class Plaintiffs

concede were received by the Claims Administrator on March 27, 2018.  (Pl Mem. at 4,)  Class Plaintiffs do not dispute that the Requests for Exclusion were timely.  Indeed, the only purported deficiency alleged by Class Plaintiffs is that the Requests for Exclusion "did not include the necessary documentary proof as set forth in the Notice and Notice Order."  (*Id*. at 5.)  However, the Class Notice did not state what documentary proof was "necessary."  That detail has been incorporated into the Class Notice after the fact by Class Plaintiffs attempting to force respondents to participate in a class settlement against their will.

The Class Notice required only "documentary proof," and the Requests for Exclusion each included ample "documentary proof."   Attached to the Balyasny Funds' Request for Exclusion was a Certification signed under penalty of perjury by Adam Finger, the General Counsel of Balyasny Asset Management, L.P. ("BAM"), which is the investment manager for the four identified Balyasny Funds.  (Amin-Giwner Decl., Ex. 1 at Ex. 1.)  Mr. Finger certified that BAM has the power to act on behalf of the Balyasny Funds, that the Balyasny Funds are the beneficial owners of the securities at issue and that each of the Balyasny Funds "requests to be excluded from the Settlement Class in *In re TerraForm Global, Inc. Securities Litigation*, 1:16-cv-07967-PKC (S.D.N.Y.)."  (*Id*.)  In addition, Mr. Finger certified that "correct and complete trading data taken from [BAM's] internal systems has been transmitted to counsel for the Balyasny Funds, Lowenstein Sandler LLP, to be formatted for submission" and that "this data, or parts thereof, will be submitted as part of this exclusion."  (*Id*.)  As explained in the exclusion request's cover letter, attached as Exhibit 2 to the Request for Exclusion "is trading data from the Balyasny Funds' Investment Manager documenting purchases and sales of Terraform Global common stock, as well as showing the beneficial ownership for each transaction/set of shares." (*Id*. at 1 and Ex. 2.)  Counsel for the Balyasny Funds created this 31-page chart by extracting and

formatting the relevant information called for by the Class Notice from the raw trade data delivered from BAM's internal electronic business records.  (Bodnar Decl. ¶ __.)  For each relevant transaction, the chart lists the particular fund who is the beneficial owner, the transaction type, the investment type (which was in all cases Global common stock), the trade date, the price at which the stock was bought or sold and the quantity of stock at issue.  (Amin-Giwner Decl., Ex. 1 at Ex. 2.)  Class Plaintiffs have not questioned the accuracy of any of this information.

The Luxor Request for Exclusion is similar.  The Certification attached to the Request for Exclusion was signed under penalty of perjury by Norris Nissim, the General Counsel of Luxor Capital Group, LP ("LCG"), which is the investment manager for the four identified Luxor Funds.  (Amin-Giwner Decl., Ex. 2 at Ex. 1.)  Mr. Nissim certified that LCG has the power to act on behalf of the Luxor Funds, that the Luxor Funds are the beneficial owners of the securities at issue and that each of the Luxor Funds "requests to be excluded from the Settlement Class in *In re TerraForm Global, Inc. Securities Litigation*, 1:16-cv-07967-PKC (S.D.N.Y.)."  (*Id.*)  In addition, Mr. Nissim certified that the "trading data being submitted with this request for exclusion is maintained and relied upon by [LCG] in the ordinary course of its business."  (*Id.*)  As explained in the exclusion request's cover letter, attached as Exhibit 2 to the Request for Exclusion "is trading data from the Luxor Funds' Investment Manager documenting purchases and sales of Terraform Global common stock, as well as showing the beneficial ownership for each transaction/set of shares."  (*Id.* at 1 and Ex. 2.)  Counsel for the Luxor Funds created this 6-page chart by extracting and formatting the relevant information called for by the Class Notice from the raw trade data contained in Luxor's internal electronic business records.  (Bodnar Decl. ¶ __.)  For each relevant transaction, the chart lists the particular fund who is the beneficial owner, the transaction type, the security's symbol (which was in all cases Global common

stock), the trade date, the quantity of stock bought or sold and the price at which it was bought or sold.  (Amin-Giwner Decl., Ex. 2 at Ex. 2.)  Again, Class Plaintiffs have not questioned the accuracy of any of this information.

The Certifications under penalty of perjury from the respective General Counsel of the investment managers for the Balyasny Funds and the Luxor Funds, coupled with the charts listing the details by fund of each of Respondents' purchases and sales of Global common stock drawn from the investment managers' internal business records (as also certified to by each investment manager's General Counsel), constitute "documentary proof  (i) of each purchase and, if applicable, sale transaction of Global common stock and (ii) demonstrating [Respondents'] status as a beneficial owner of the Global common stock," as required by the Class Notice.  (Bodnar Decl., Ex. A at 5-6.)

### C.    Post-Exclusion Communications

Indeed, the post-submission behavior by Class Counsel and the Claims Administrator confirms that Respondents complied with the requirements of the Class Notice.   If it were really the case that the Class Notice required institutional investors like Respondents to submit "trade confirmations, brokerage statements or similar documentation" with their exclusion requests (Pl Mem. at 6), then that supposed deficiency would have been obvious to both the Claims Administrator and Class Counsel from the *moment* they received the Requests for Exclusion. Yet, Respondents never received a deficiency notice or any other communication from the Claims Administrator, and were never told they needed to supplement their submission with additional materials.

Instead, Class counsel reached out to Respondents' counsel by email on April 12, 2018 – 16 days after the Claims Administrator received the Requests for Exclusion.  (Bodnar Decl. ¶

__.)  That email did not mention any deficiency.  (*Id.*)  When *Respondents'* counsel phoned Class Counsel, Class Counsel, never once during that telephone conversation, even suggested that Respondents' Requests for Exclusion were invalid.  (*Id.*)  Quite the contrary:  Class Counsel urged Respondents to withdraw their exclusion requests because Class Counsel believed that, since Respondents had opted-out of the Class, the Defendants may have acquired the right to terminate the Class Settlement pursuant to the "blow" provision contained in paragraph 10.6 of the Settlement Stipulation.[2]  (*Id.*)  Presumably, if Defendants elected to do so, it would jeopardize both the settlement and Class Counsel's requested fee award.

The following day, Class Plaintiffs submitted their reply papers in further support of their motion for final approval of the Class Settlement.  Their submission included a Supplemental Affidavit of Jose E. Fraga, the Claims Administrator's Senior Director, Operations, in which Mr. Fraga confirmed receipt of the Requests for Exclusion from the Balyasny Funds and the Luxor Funds and included each of the Respondents in an attached list of "the persons and entities who submitted the requests for exclusion."   (Doc. 336-1, at ¶ 4 and Ex. A.)  Clearly, Mr. Fraga understood that Respondents had provided reasonable notice of an intent to exclude themselves as required by law.  Nowhere in his  affidavit did Mr. Fraga indicate that he did not understand whether they intended to exclude themselves or even suggest that the Requests for Exclusion were deficient in any way.  Although Class Plaintiffs in their Reply Memorandum dropped a

---

[2]  It should be noted that Respondents have no way of verifying the accuracy of Class Counsel's representations made during this telephone call.  The opt-out threshold necessary to "blow" the Class Settlement is contained in a secret Supplemental Agreement between Class Plaintiffs and the Defendants. Respondents have never seen that document, and have no knowledge whether their exclusion from the Settlement Class is sufficient to trigger the Defendants' termination right.  Given the letters submitted to the Court by counsel for the Defendants and the Class in advance of the April 27 hearing, we understand that Defendants' purported right to terminate the settlement is a matter of dispute between the settling parties.  Respondents take no position on that issue.  Indeed, as explained further below, Defendants' alleged termination right simply has no bearing on the question of whether Respondents validly exercised their constitutional right to exclude themselves from the Class.

footnote stating that "Plaintiffs and the Claims Administrator are reviewing the validity of the requests for exclusion" (Doc. 169 on the *In re TerraForm Global* Docket, at 1 n. 4), they did not elaborate on what the purported deficiencies might be.  Again, the alleged deficiency to which they now point would have been obvious to them by that point.

In fact, the first time Class Plaintiffs took the position that Respondents' Requests for Exclusion were invalid was in the papers they filed in support of their proposed Order to Show Cause.  But, even at that point, Class Plaintiffs could not identify anything in the Class Notice (or anywhere else, for that matter) that requires parties who request exclusion from the Class to submit "trade confirmations, brokerage statements or similar documentation" with their exclusion requests.  The only "evidence" they point to in support of their application – other than their own *ipse dixit* – is the Declaration of Stephanie Amin-Giwner, an Assistant Director, Operations at the Claims Administrator.  (Pl Mem. at 6 (arguing that, as "explained by the Claims Administrator, which is a well-known administrator of class action settlements, neither the Balyasny Funds nor the Luxor Funds submitted documentary proof of their transactions, as was required for a request for exclusion to be valid").)  But Ms. Amin-Giwner merely asserts in conclusory fashion that the Class Notice required documentary proof to be submitted with exclusion requests, and that Respondents failed to submit documentary proof of their transactions.  (Amin-Giwner Decl. ¶¶ 3, 5.)  She does not "explain" what form of documentary proof was supposedly required, or why the documentation submitted by Respondents was inadequate.  Nor does Ms. Amin-Giwner explain why the Claims Administrator never informed Respondents of this supposed deficiency before she submitted her declaration on April 18, 2018. In short, the Claims Administrator is simply echoing the same *ipse dixit* assertions Class Plaintiffs are making, without any support in the actual language of the Class Notice that Class

Counsel drafted.

## ARGUMENT

## I.      RESPONDENTS' REQUESTS FOR EXCLUSION ARE VALID

When the Court certifies a Rule 23(b)(3) class, it is required to direct the distribution of notice to class members that "must clearly and concisely state in plain, easily understood language: … that the court will exclude from the class any member who requests exclusion [and] the time and manner for requesting exclusion[.]"  FED. R. CIV. P. 23(c)(2)(B)(v), (vi).  As the Supreme Court has held, a Rule 23(b)(3) class – like the one here – "is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (citing FED. R. CIV. P. 23(c)(2)(B)).

This right to opt-out of a Rule 23(b)(3) class is of constitutional dimensions.   As explained by the Court in *Dukes*, in "the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."  *Id*. at 363; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.");  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (holding, in connection with Rule 23(b)(3) class, that the "procedural due process rights of these members include an opportunity to be excluded from the action").  The due process rights of absent class members include "the right to intelligently and individually choose whether to continue in a suit as class members."  *Hanlon*, 150 F.3d at 1024.  No matter how much class plaintiffs or their lawyers would like all members to remain in the class, it is for the class members individually – not class counsel – to decide whether they wish to exclude themselves.  *Id*. ("The right to

participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel."). Class representatives and attorneys representing the class have no ability to force class members who validly opt-out to accept the class settlement and release their claims against the settling defendants.

It is now black-letter law that, to validly exclude herself from a class that provides opt-out rights, a class member need only give a "***reasonable indication of a desire to opt out***." *In re Four Seasons Secs. Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974) (emphasis added). "[C]onsiderable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself ***and any written evidence of it should suffice***." *Id.* (emphasis added). The Second Circuit expressly adopted this standard in the context of a Rule 23(b)(2) class that provided opt out rights in *Plummer v. Chemical Bank*, 668 F.2d 654, 657 n. 2 (1982) (citing *Four Seasons*, 493 F.2d at 1291) ("If proposed class members are to be permitted to opt out, we find nothing in Rule 23 which requires them to file written reasons for their exercise of choice. ***Any reasonable indication of a desire to opt out should suffice.***") (emphasis added). An exclusion request's function is to communicate the class member's notice of intent to remove himself from the class; it is not to be construed technically like "a will, a deed or a contract." *See Four Seasons*, 493 F.2d at 1291.

Furthermore, district courts in this Circuit and throughout the country have consistently applied the "reasonable indication" standard when analyzing the validity of a class member's attempt to opt-out of a class. *Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629, 2011 WL 6945186, at *11 (E.D.N.Y. Dec. 30, 2011) (""[I]f there is a dispute about whether a class member has followed the appropriate opt out procedures, the class member bears the burden of establishing that he or she has made a sufficient effort to communicate an intent to opt out through the

appropriate channels … ***Because flexibility in making this determination is appropriate, any written evidence containing a reasonable indication of a desire to opt out ought to be sufficient.***") (internal quotation marks and citation omitted; emphasis added); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 365 (E.D. Pa. 2004) ("The Court agrees with the Tenth Circuit that a 'reasonable indication' of intent to opt out is sufficient.") (citing both *Four Seasons* and *Plummer*); *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 215 (N.D. Ill. 1997) (following *Four Seasons* and noting the "reasonable indication" standard has been adopted by a "number of other courts"); *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 70 (N.D. Cal. 1976) (discussing *Bonner v. Texas City Independent School District of Texas*, 305 F. Supp. 600 (D. Tex. 1969)). "This flexible standard is necessary to give effect to the Due Process right to opt out identified by the Supreme Court[.]" *Gortat*, 2011 WL 6945186, at *11; *In re Linerboard*, 223 F.R.D. at 365 (same); *McCubbrey*, 71 F.R.D. at 70 ("The serious due process implications of holding an absent member bound by a class adjudication demand that we look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded from a class suit."). As a result, any purported prejudice to the class or other parties from recognizing a member's constitutionally-protected exclusion is not relevant to application of the "reasonable indication" standard.

Class Plaintiffs' failure to acknowledge – let alone attempt to distinguish – the Second Circuit's controlling authority in *Plummer* or any of its progeny is fatal to its application here. Indeed, under this well-established body of law, Respondents' Requests for Exclusion are clearly valid.

*First*, there can be no serious dispute that Respondents submitted written evidence to the Claims Administrator that contained a reasonable indication of their desire to exclude themselves

from the Class.  Both the cover letters and the General Counsel Certifications in each Request for

Exclusion are explicit in communicating Respondents' desire to opt out of the Class.  (Amin-

Giwner Decl., Exs. 1, 2 (Certifications stating that the each of the Funds at issue "requests to be

excluded from the Settlement Class in *In re TerraForm Global, Inc. Securities Litigation*, 1:16-

cv-07967-PKC (S.D.N.Y.)").)  There is no ambiguity in this statement, and no basis on which

Class Counsel or the Claims Administrator could seriously contend they did not understand

Respondents' desire to be excluded.  Indeed, Class Counsel clearly understands that Respondents

desire to exclude themselves and are concerned that it will trigger Defendants' option to

terminate the settlement.  Indeed, other courts have upheld the validity of challenged exclusion

requests even when there was some arguable ambiguity in the request.  *See*, *e.g.*, *Four Seasons*,

493 F.2d at 1291 (finding letter that indicated class member's desire to be excluded from release

in class settlement was sufficient to opt-out, even though letter also expressed a wish to share in

the settlement itself); *In re Brand Name Drugs*, 171 F.R.D. at 214-16 (holding that exclusion

request sent to the wrong address was valid).  Because Respondents' Requests for Exclusion

satisfy the test from *Plummer* and *Four Seasons*, they are valid.  That ends the matter.

 *Second*, even were the Court to look beyond the reasonable indications of Respondents'

intent to opt-out of the Class and consider whether they submitted adequate "documentary proof"

of their purchases and sales of Global common stock, Respondents still prevail.   As a

preliminary matter, Rule 23 required the Class Notice to "***clearly and concisely state in plain,***

***easily understood language***" the "time ***and manner*** for requesting exclusion."  Fᴇᴅ. R. Cɪᴠ. P.

23(c)(2)(B)(vi) (emphasis added).   Although the Class Notice stated that class members

requesting exclusion must include some "documentary proof" of their transactions and beneficial

owner status, Class Counsel chose not to define that term.  Putative class members were thus left

to guess about what information needed to be supplied.    Nowhere in the Class Notice is there

any indication that voluminous "trade confirmations" or "brokerage statements" were the only

forms of acceptable "documentary proof."   If that is what Class Counsel wanted, it had an

obligation under Rule 23 to communicate that directive to class members in "plain, easily

understood language."   Class Counsel did not do so, and cannot retroactively impose such a

requirement after the fact.  Indeed, if it was so obvious that such specific forms of documentation

were required to be submitted with the exclusion requests, then one would have expected the

Claims Administrator and Class Counsel to bring that supposed deficiency to Respondents'

attention long before they filed the proposed Order to Show Cause.  Moreover, there is no reason

a putative class member would believe that documentary evidence sufficient to satisfy the

requirements for *submission of a claim* would be insufficient to request *exclusion*.

      Nor can Class Counsel evade its responsibility to draft a clear Class Notice by contending

that Respondents had some obligation to "seek clarification" about what documentation had to

be submitted with the exclusion requests.  (Pl Mem. at 7.)  There was nothing to clarify.  Rule 23

requires the Class Notice to communicate the requirements for obtaining exclusion in plain,

easily understood language.  If submission of brokerage statements or trade confirmations was

required—and no other forms of evidence acceptable--, the Class Notice had to say so.  It does

not, and any consequences from that omission fall on Class Plaintiffs, not Respondents.[3]

      While not defined anywhere, what constitutes acceptable "documentary proof" can be

gleaned from the Claims Administrator's own instructions for electronic submission of proofs of

claim.  Those instructions do not require that claimants submit voluminous brokerage statements

---

[3] *Silvercreek Management, Inc. v. Banc of America Securities, LLC*, 534 F.3d 469 (5th Cir. 2008) (cited in Pl Mem. at 7), is not to the contrary.  In that case, while the preliminary approval order did not include the opt-out deadline, the Notice sent to class members did.  *Id*. at 471-72.  There was thus no violation of Rule 23(c)'s plain language requirement.

or trade confirmations in order to submit a valid claim.   Such materials are required only if a claimant is specifically selected for an audit after the proof of claim has been submitted.  (*See* Bodnar Decl., Ex. B at 4-5.)  The need for greater proof in the context of an audit for persons who are trying to obtain a share of the Class settlement proceeds is understandable.  But there is no reason to demand audit-level documentation from persons who simply want to exclude themselves from the Class.  The notion that opt-outs are to be held to a higher standard of documentation for their trades in Global common stock than claimants who are using their trades to calculate their share of the settlement fund simply cannot be taken seriously.

Moreover, the Certifications and summaries of data from the investment managers' business records that were submitted to the Claims Administrator as part of the Requests for Exclusion fall easily within the generally-accepted understanding of "documentary proof."  As a general matter, "proof" is the "effect of evidence; the establishment of a fact by evidence." *Proof*, BLACK'S LAW DICTIONARY (6th ed. 1990).  Proof that is "documentary" simply means the effect of (or establishment of a fact by) evidence that consists of something more than pure oral testimony.   See *Documentary Evidence*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Documentary evidence" means "[e]vidence derived from conventional symbols (such as letters) by which ideas are represented on material substances.  Such evidence as is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissible for the purpose, as distinguished from 'oral evidence,' or that delivered by human beings viva voce.").

Under this common understanding, both the General Counsel Certifications and the data from the business records of Respondents' investment managers qualify as "documentary proof." *See*, *e.g.*, *Lawson v. Fed. Res. Bank of N.Y.*, No. 03 Civ. 1154 (PKC), 2004 WL 1770017, at *1

(S.D.N.Y. Aug. 6, 2004) (discussing "affidavits or other documentary evidence" in context of summary judgment motion).  The data for each transaction described in the charts attached to the Requests for Exclusion was extracted from BAM or LCG's internal business records provided to Respondents' counsel.  (Bodnar Decl. ¶¶ __.)  In their respective Certifications, the General Counsels for BAM and LCG each confirmed this fact.  As a result, were the Requests for Exclusion subject to the Federal Rules of Evidence (which they obviously are not), the charts, as summaries of the investment managers' underlying business records, would constitute admissible evidence of Respondents' transactions in Global common stock.  *See* FED. R. EVID. 803(6), 1006; *United States v. Harris*, 881 F.3d 945, 950-51 (6th Cir. 2018) (affirming the admission in a criminal trial of trade blotters created by clearing firms in the ordinary course of business under the business records exception as well as summaries of other bank records and clearing firm records); *United States v. Flotron*, No. 3:17-cr-00220 (JAM), 2018 WL 1790828, at *3 (D. Conn. April 15, 2018) (denying motion to exclude summary charts "depicting hundreds of trading sequences and related data relevant to the Government's contention that these sequences were spoofing episodes" as they were admissible under Rule 1006); *United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 815915, at *1 (S.D.N.Y. March 5, 2013) (denying motion to exclude witness who would be called to offer charts and "summarize voluminous records of price and trading volume information regarding certain of the stocks at issue in this case, trading records of certain brokerage accounts at issue in this case, and business records maintained by FINRA" because such summaries are admissible under Rule 1006).  If they would be admissible at trial, the charts attached to the Requests for Exclusion are more than sufficient to document Respondents' purchase and sale transactions under the Class Notice.  And, the accuracy of the

charts submitted by Respondents has not been questioned by either Class Plaintiffs or the Claims Administrator.

This conclusion is further bolstered by the policy underlying Rule 23 – as necessitated by the constitutional foundations of the right to opt-out of a Rule 23(b)(3) class – that requests for exclusion should be relatively simple and class members seeking to exclude themselves from the class should not have to bear an undue burden in doing so.  *See Four Seasons*, 493 F.2d at 1291. "It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document" in order to opt-out.  *Id.*; *see also McCubbrey*, 71 F.R.D. at 70 (instructing that court must "look beyond formalistic procedures" in evaluating opt-out requests). Here, Class Plaintiffs advocate that Respondents should shoulder an even greater burden – the production of voluminous trading records that do not provide Class Counsel or the Claims Administrator with any better information than the Requests for Exclusion already do.[4]   The Balyasny Funds' brokerage statements alone run to more than 30,000 pages and contain extensive information about unrelated investments that would have to be redacted before being produced to the Claims Administrator.  (Bodnar Decl. ¶ __.)  Under Class Plaintiffs' position, the Balyasny Funds would have to bear the expense and inconvenience of producing redacted versions of these voluminous documents ***just so they can exclude themselves from the Class***. That makes no sense whatsoever.

*Third*, Class Counsel cannot arrogate to itself the power to exercise Respondents' opt-out rights by retroactively inserting new requirements into the Class Notice.  The right to opt-out of a

---

[4] To the extent Class Counsel legitimately needs to know the aggregate amount of Global securities Respondents purchased pursuant to or traceable to the Registration Statement in order to determine whether Defendants' right to terminate the Class Settlement has been triggered, the charts attached to the Requests for Exclusion already provide them with this information.  Class Plaintiffs have not shown they require anything further.

class and retain legal claims is a right that belongs to Respondents individually, and it is for them to decide in furtherance of their own interests whether they should remain in the Class. *Hanlon*, 150 F.3d at 1024. They have chosen to exclude themselves from the Class and validly effectuated that choice. Whether the consequences of that decision are favorable or unfavorable to the Class Plaintiffs, the Class Settlement, Class Counsel's fee award, or any other aspect of the Class is of no moment.

## II.   THE AUTHORITIES CITED BY CLASS PLAINTIFFS ARE INAPPOSITE

Other than the Fifth Circuit's *Silvercreek* decision (addressed in n. 3, *supra*), Class Plaintiffs cite only two cases that they claim support their application: *In re Prudential-Bache Energy Income Partnerships Securities Litigation*, No. MDL 888, 1995 WL 263879 (E.D. La. May 4, 1995) (cited in Pl Mem. at 6-7); and *In re Prudential Securities, Inc. Limited Partnerships Litigation*, 164 F.R.D. 362 (S.D.N.Y.), *aff'd*, 107 F.3d 3 (2nd Cir. 1996) (unpublished disposition) (cited in Pl Mem. at 7). What Class Plaintiffs fail to disclose, however, is that both of these cases arose in a very different procedural context. In both cases, and unlike the case at bar, the class members seeking to opt-out *did not file any request for exclusion before the court-ordered deadline* and were now seeking leave from the court to allow them to file an untimely opt-out. *See In re Prudential Secs.*, 164 F.R.D. at 368 (investors who failed to opt-out "have moved the Court for extraordinary relief from the Final Order, and permission to opt-out beyond the established deadline"); *In re Prudential-Bache*, 1995 WL 263879, at *1-7.

The distinction is critical, because a timely opt-out puts defendants on notice about how many claims will be released and what exposure they will continue to face after the class action is settled. After receipt of such notice, defendants typically have a negotiated right to terminate their settlement if the remaining exposure is too high. Once the deadlines for submission of

requests for exclusion and for defendants to terminate the settlement have passed, and the class settlement has become final, a court should be reluctant to allow late-filed requests for exclusion resurrecting released claims against the defendants. To obtain permission to file an untimely exclusion request or to extend the deadline for requesting exclusion, a class member must therefore demonstrate "excusable neglect." *In re Prudential Secs.*, 164 F.R.D. at 368-69. That requires a showing of good faith and a reasonable basis for not acting within the required time period, and also empowers the Court in the exercise of its discretion to consider prejudice to other parties "and the impact of granting the requested extensions on the Settlement itself." *Id.* at 369; *In re Prudential-Bache*, 1995 WL 263879, at *4 (holding that class member's "failure to mail an opt out request in response to second Class Notice does not constitute excusable neglect"). In *Prudential Securities*, Judge Pollack found the impact on the class settlement itself critical, and determined that "granting leave to file untimely exclusions" – in that case, after the class settlement had been granted final approval – would undermine the finality of judgments for settling defendants and thereby discourage settlement of class actions. 164 F.R.D. at 371-72.

None of this is even relevant to Class Plaintiffs' application here, and both cases cited by Class Plaintiffs are inapposite. Respondents submitted timely Requests for Exclusion. No one is confused about Respondents' intent or the extent of the exposure represented by their claims. They are not seeking leave to opt-out after the exclusion deadline, and need not show excusable neglect. Class Plaintiffs apparently agree, since they do not even mention the concept of excusable neglect in their moving papers. As a result, any consideration of prejudice or whether Defendants have the ability to terminate the Class Settlement upon Respondents' exclusion from the Class is immaterial here. (*See* Pl Mem. at 8.) The only relevant consideration is whether Respondents submitted written evidence to the Claims Administrator that conveyed a

"reasonable indication" of their intent to exclude themselves from the Class.  As the Requests for Exclusion constitute such a reasonable indication of intent to opt-out, Respondents validly excluded themselves from the Class.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that Class Plaintiffs' application to declare their Requests for Exclusion invalid be denied in its entirety.

Dated:  April 26, 2018
New York, New York

Respectfully submitted,

By:  /s/ Lawrence M. Rolnick
Lawrence M. Rolnick
Thomas E. Redburn (*pro hac vice* pending)
Marc B. Kramer
Richard A. Bodnar
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Fax:  (212) 262-7402
lrolnick@lowenstein.com
tredburn@lowenstein.com
mkramer@lowenstein.com
rbodnar@lowenstein.com

*Attorneys for Atlas Master Fund, Ltd. Atlas Enhanced Master Fund, Ltd., Atlas Fundamental Trading Master Fund, Ltd., Atlas Quantitative Trading Fund, Ltd., Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Wavefront, LP and Thebes Offshore Master Fund, LP*